UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TATTOOS BY DESIGN, INC.
d/b/a HARDCORE TATTOO and
NICHOLE K. HUDSON,

                Plaintiffs,

                **DECISION AND ORDER**
                09-CV-458A

     v.

MARK KOWALSKI,
HANS KULLERKUPP, and
COUNTY OF ERIE,

                Defendants.

---

## INTRODUCTION

Defendants Mark Kowalski, Hans Kullerkupp, and the County of Erie have made a motion to dismiss this defamation case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In short, defendants contend that absolute privilege precludes plaintiffs' claims in this case, and that plaintiffs have not articulated any claims that are subject to remedies under 42 U.S.C. § 1983. The Court held oral argument on October 27, 2009. For the reasons below, the Court will agree with defendants that plaintiffs have failed to state a cognizable federal claim. The Court, however, will defer to state court for appropriate resolution of the remaining defamation claim, and accordingly will remand this case to state court *sua sponte*.

## BACKGROUND

This case concerns allegations of defamation with respect to a press release issued by the Erie County Department of Health ("ECDOH"). Plaintiffs do business in Erie County, New York in the tattoo industry under the trade name Hardcore Tattoo. Defendants are the County of Erie and two individuals who work in ECDOH. According to the complaint, defendants issued a press release on May 6, 2008 that made reference to plaintiffs. The press release, which was posted on the ECDOH website, warned the public about a tattoo artist named John Portik III ("Portik"). According to the press release, Portik, during his work, may not have used proper infection control techniques to prevent transmission of blood-borne infections. ECDOH urged anyone who received tattoos from Portik to undergo testing for blood-borne infections such as hepatitis B, hepatitis C, and HIV. The last substantive paragraph of the press release briefly mentioned where Portik worked in recent years as a tattoo artist. Among other information, ECDOH stated in this paragraph that "Mr. Portik also reported working in Erie County during 2004 and/or 2005 as an independent contractor for Hardcore Tattoo. Additionally, Mr. Portik reportedly performed tattoos at several home parties while associated with Hardcore Tattoo." This quotation is the heart of the entire litigation between the parties, since plaintiffs deny that Portik ever worked for them or had any relationship with them. As a result, plaintiffs contend that ECDOH smeared them by linking them to Portik in the press release.

In response to what they consider defamatory conduct by ECDOH, plaintiffs filed the summons and complaint in this case on May 5, 2009 in New York State Supreme Court, Erie County. The complaint contains two claims. The first claim is a state claim for defamation, alleging that defendants deliberately published false information despite having learned through a prior investigation that Portik had not worked for plaintiffs at any time. The second claim is a federal claim alleging that defendants' decision to issue the press release "violated the constitutional rights of plaintiffs to both procedural and substantive due process." On May 13, 2009, defendants removed this case to this Court on the basis that the second claim conferred federal question jurisdiction on this Court.

Defendants filed the pending motion to dismiss on June 16, 2009. In support of the motion, defendants contend that they are entitled to absolute privilege precluding all of plaintiffs' claims because they issued the press release as part of their governmental duty to advise the public about disease transmission and other health issues. As part of this argument, defendants cite to an essentially identical case that plaintiffs brought against the New York State Department of Health in the New York Court of Claims. (*See* Dkt. No. 5-8.) The Court of Claims dismissed that case on the grounds of privilege. Additionally, defendants argue that plaintiffs have failed to specify a particular liberty or property interest beyond reputation, and that damage to reputation does not suffice by itself to lay a foundation for remedies available under Section 1983.

3

In opposition to defendants' motion, plaintiffs have submitted sworn affidavits corroborating their contention that they never have had any relationship with Portik. Plaintiffs additionally argue that absolute privilege is not available here because defendants' decision to issue the press release, in spite of the conclusions of their own investigation, constituted an unwarranted and mean-spirited action that went beyond ECDOH's governmental duties. Plaintiffs argue further that a finding of absolute privilege is inappropriate this early in the litigation, and that there is no evidence in the record that the Erie County Commissioner of Health viewed or was aware of the press release. According to plaintiffs, if the Commissioner of Health never saw or was aware of the press release then the decision to issue it must have been reckless and not in accordance with any governmental duty. Finally, plaintiffs argue in opposition to defendants' motion that they have pleaded the Section 1983 claim sufficiently. Plaintiffs believe that the assertion of Fifth and Fourteenth Amendment violations suffices to allow the federal claim to move forward. Plaintiffs draw an analogy in this regard to Section 1983 claims regarding police abuse. In those cases, according to plaintiffs, the federal claim may appear to resemble a state law claim but in fact relates directly to an improper seizure under the Fourth Amendment.

## DISCUSSION

The Court will begin with an assessment of plaintiffs' federal claim under Section 1983, since that claim was the basis of defendants' removal of this case

4

to this forum. In reviewing this claim, the Court bears in mind that "[t]he allegations of the [complaint] . . . in the adjudication of a motion to dismiss under Rule 12(b)(6) must be accepted as true, drawing all inferences from the pleaded facts in Plaintiffs' favor . . . ." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 568 F.3d 374, 377 (2d Cir. 2009) (citation omitted).

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (internal quotation marks and citations omitted). In the specific context of due process violations, "we must first identify the property interest involved. Next, we must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005) (citation omitted). Here, plaintiffs' complaint, no matter how liberally construed, fails to state any property or liberty interest affected by the issuance of the press release. The complaint states only that the press release was defamatory and that its publication in itself caused plaintiffs' injury by damaging their reputation. This allegation alone cannot sustain a Section 1983 claim. "A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983. Instead, when dealing with loss of

5

reputation alone, a state law defamation action for damages is the appropriate means of vindicating that loss." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (citations omitted). Plaintiffs' own analogy to Fourth Amendment cases highlights the legal deficiency here. In cases that allege tortious police conduct, the allegation in itself, if true, could constitute a cognizable claim of a substantive due process violation. *See, e.g., Pickering v. Mercado*, No. 03 CV 5654, 2006 WL 1026677, at *7 (E.D.N.Y. Apr. 17, 2006) (noting that a claim of improper police force can constitute a substantive due process violation under the right circumstances). In other words, if this Court assumed in a police abuse case that all of the allegations were true then a legally cognizable claim would follow, and a Rule 12(b)(6) motion would have to denied. Here, in contrast, nothing flows from an acceptance of plaintiffs' allegations. Under these circumstances, the Court will grant that part of defendants' motion pertaining to plaintiffs' federal claim. *Cf. Paul v. Davis*, 424 U.S. 693, 712 (1976) ("Respondent in this case cannot assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment. That being the case, petitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause.").

The dismissal of plaintiffs' federal claim raises the issue of whether this Court has jurisdiction over their remaining state claim. This Court "may decline

to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(2); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims . . . .") (citations omitted). In fact, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* (citations omitted); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.") (citations omitted). The Court may remand this case *sua sponte* if it declines to exercise supplemental jurisdiction. *See Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 10 (E.D.N.Y. 2005) (holding that a remand can occur *sua sponte* and without further notice) (citations omitted).

The current status of this case weighs against an exercise of supplemental jurisdiction. The state claims substantially predominate because the only facts pled in the complaint concern defamation, which state law will address. The case is so new and undeveloped that joinder of issue has not even occurred yet. *Cf. Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 242 (2d Cir. 2007) (holding

7

that, in the context of amended pleadings, a "motion to dismiss, because it was a motion, not a pleading, was not a 'responsive pleading'") (citation omitted). Judicial economy, convenience, and fairness thus are not issues at this time. Under these circumstances, keeping this case in this forum will not advance a full and fair resolution of the litigation. The Court thus declines to exercise supplemental jurisdiction over the state law claim for defamation. The Court instead will deny the remainder of defendants' motion without prejudice to renew in state court as they may see fit.

## CONCLUSION

For all of the foregoing reasons, the Court hereby grants that portion of defendants' motion pertaining to plaintiffs' federal claim, and dismisses that claim. Defendants' motion is otherwise denied without prejudice.

As the Court has declined to exercise supplemental jurisdiction over plaintiffs' remaining claim, the Clerk of the Court is directed to take the steps necessary to remand this case to New York State Supreme Court, Erie County.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: November 5, 2009